PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BANDOL LIM, *et al.*, | ) | |
| | ) | CASE NO.  4:23CV1454 |
| Plaintiffs, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| EDWARD HIGHTOWER, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 35 and 35-14] |

Pending are Defendants Edward Hightower ("Hightower"), Adam Kroll ("Kroll"), and Daniel A. Ninivaggi's ("Ninivaggi") Request for Judicial Notice (ECF No. 35-14) and Motion to Dismiss (ECF No. 35) the amended securities class-action complaint (ECF No. 31) brought by Lead Plaintiffs Andrew and Joshua Strickland, individually and on behalf of all others similarly situated.  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the following reasons, the Court takes Judicial Notice of Exhibits 1-11 (ECF Nos. 35-3 through 35-13) and grants Defendants' Motion to Dismiss (ECF No. 35).

## I. Background

The above-entitled action concerns statements made by Defendants on behalf of Lordstown Motors Corp. ("LMC") that Plaintiffs allege misled investors about the state of LMC's partnership with Foxconn, an electronics manufacturer out of Taiwan.  *See* Amended Class Action Complaint (ECF No. 31) at PageID #: 723, ¶ 2.  Plaintiffs claim that Defendants

(4:23CV1454)

failed to disclose significant problems in the partnership leading up to Foxconn's repudiation of the agreement with LMC and the bankruptcy of LMC.  *See* ECF No. 31 at PageID #: 723, ¶ 2.

 Hightower has acted as LMC's President and as Chief Executive Officer ("CEO") beginning in July 2022.  *See* ECF No. 31 at PageID #: 730, ¶ 25.  Kroll has served as LMC's Chief Financial Officer ("CFO") since October 2021.  *See* ECF No. 31 at PageID #: 730, ¶ 26. Ninivaggi served as LMC's CEO from August 2021 to July 2022.  *See* ECF No. 31 at PageID #: 730, ¶ 27.

 After Foxconn repudiated its agreement with LMC, LMC filed an Adversary Complaint against Foxconn (ECF No. 31-1 at PageID #: 829-72) alleging fraud and breach of contract, which accused the company of intentionally driving LMC into bankruptcy.  *See* ECF No. 31 at PageID #: 728, ¶ 17.[1]  By failing to disclose the problems in the partnership prior to the bankruptcy proceedings, Plaintiffs allege Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and § 78t(a), and associated Rule 10b–5 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b–5.  *See* ECF No. 31 at PageID #: 723, ¶ 1.

 Plaintiffs allege the Class Period begins on August 4, 2022, during LMC's earnings conference call for the second quarter of 2022.  *See* ECF No. 31 at PageID #: 757, ¶ 112.

---

[1]  *See Lordstown Motors Corp., et al. v. Hon Hai Precision Industry Co., Ltd, et al.*, No. 23-50414-MFW (Bankr. D. Del. filed June 27, 2023).

(4:23CV1454)

### A. Initial Agreement with Foxconn

In 2018, LMC was founded as an electronic vehicle ("EV") manufacturing company with the main goal of developing the Endurance, an electric full-size pickup truck. *See* ECF No. 31 at PageID #: 733, ¶¶ 37-38. While LMC planned to launch sales of Endurance in 2022, the company faced financial setbacks leading to an initial agreement with Foxconn to obtain needed funding. *See* ECF No. 31 at PageID #: 733, ¶ 39. In September 2021, LMC signed a non-binding Agreement in Principle (ECF No. 31-1 at PageID #: 874-82) with Foxconn which was designed to "combine Foxconn's resources and efficiencies with Lordstown's innovation, technology, manufacturing plant, and human resources to [] develop [ jointly] the next generation of electric vehicles." ECF No. 31 at PageID #: 734, ¶ 43.

Under the Agreement in Principle, Foxconn would purchase LMC's manufacturing plant for $230 million, $50 million in LMC's common stock, procure LMC's exercisable warrants for $1.7 million in shares of common stock, and enter into a Contract Manufacturing Agreement and Joint Venture Agreement. *See* ECF No. 31 at PageID #: 734-35, ¶ 44. In compliance with the Agreement in Principle, LMC and Foxconn then executed an Asset Purchase Agreement (ECF No. 31-1 at PageID #: 884-954) for Foxconn to purchase the manufacturing plant, *see* ECF No. 31 at PageID #: 734-35, ¶ 44, subject to approval from the Committee on Foreign Investment in the United States, *see* ECF No. 31-1, PageID #: 910.

### B. The Joint Venture Agreement ("JVA") (ECF No. 31-1 at PageID #: 991-1052)

The joint venture was formed with 55% to be owned by Foxconn and 45% by LMC, requiring Foxconn to contribute $55 million. *See* ECF No. 31 at PageID #: 738, ¶¶ 56-57;

3

(4:23CV1454)

PageID #: 740, ¶ 64.  According to the Adversary Complaint, Foxconn delayed the development

of the JVA between November 10, 2021 and May 11, 2022 before finally relenting and executing

the agreement.  *See* Doc 1 at Page 11, ¶ 33 in No. 23-50414-MFW; ECF No. 31 at PageID #:

737, ¶¶ 52-53.  The parties experienced further delays and disagreements surrounding budgeting,

with Foxconn attempting to implement a clause in the JVA requiring LMC to get Foxconn's

approval for all purchases under the joint venture.  *See* ECF No. 31 at PageID #: 739, ¶ 59.

Plaintiffs' confidential witness ("CW-1"), a former employee of LMC and employee of Foxconn

at the time of the disputed events, alleges Foxconn created "roadblocks" for LMC beginning in

late 2022 and that he believed Foxconn intended to force LMC into bankruptcy.  *See* ECF No. 31

at PageID #: 739-40, ¶¶ 61-63; PageID #: 743-45, ¶¶ 73-75.  Foxconn also failed to provide LMC

with the data for its Model C and Model E vehicles as stipulated under the JVA and continued to

delay fulfilling its commitments.  *See* ECF No. 31 at PageID #: 740-41, ¶¶ 64-66.  Foxconn

delayed approving LMC's draft budget and providing the agreed upon funds for several months,

stating it disagreed with the proposal.  *See* ECF No. 31 at PageID #: 743, ¶¶ 71-72.  During these

delays, Hightower travelled to Taiwan at Foxconn Chairman Young Liu's request.  Hightower

met with the chairman of Foxconn, but the CEO of Foxtron, a Foxconn affiliate in Taiwan,

"refused to meet with him."  ECF No. 31 at PageID #: 742, ¶ 69.  Throughout the delays,

Foxconn publicly characterized the partnership as successful, stating its investment in LMC

served to "strengthen our development and design capabilities."  Foxconn's Third Quarter 2022

Investor Conference (ECF No. 35-3) at PageID #: 1265.  Under the JVA, Foxconn and LMC

began production of the Endurance vehicle in September 2022.  *See* ECF No. 31 at PageID #:

4

(4:23CV1454)

801-802, ¶ 188).  Regarding manufacturing, LMC disclosed that the Endurance's production cost

was "well above our anticipated selling price" and that production would be limited "through

2023 or possibly longer."  LMC's Form 10-K filed on February 28, 2022 (ECF No. 35-5) at

PageID #: 1299.

**C. The Investment Agreement ("IA")(ECF No. 31-1 at PageID #: 1054-1114)**

On October 14, 2022, LMC sent a letter confronting Foxconn about its breaches of the

JVA, notably the failure to provide the Model C and Model E designs by October 2022.  *See* ECF

No. 31 at PageID #: 743, ¶ 72.  As a result, Foxconn requested that the companies restructure

their agreement, proposing a direct investment agreement with Foxconn and Softbank, a large

multi-national technology investor.  *See* ECF No. 31 at PageID #: 745, ¶¶ 76-77.  After

implementing the IA, Foxconn characterized its "cooperation" with LMC as "progressing quite

smoothly."  Foxconn's Third Quarter 2022 Investor Conference (ECF No. 35-3) at PageID #:

1267.  Foxconn Ventures PTE Ltd., a subsidiary of Foxconn and Softbank, agreed to invest a

total of approximately $170 million in LMC under the IA, providing substantially greater funding

for LMC.  *See* ECF No. 31 at PageID #: 745, ¶¶ 77-78.  The companies executed the IA on

November 7, 2022.  LMC and Foxconn subsequently amended the IA to allow the proceeds from

Foxconn's purchase of preferred stock to be used either for a Softbank-backed EV program or for

a substitute program developed by LMC.  *See* ECF No. 31 at PageID #: 747-48, ¶¶ 84-85.  On

December 22, 2022, the companies rescinded that amendment, and replaced it with Amendment

No. 1 to Investment Agreement (ECF No. 31-1 at PageID #: 1119-20), which amended Section

5.12 of the IA and continued to allow funding for a joint EV program.  *See* ECF No. 31 at

(4:23CV1454)

PageID #: 748, ¶ 87.  The IA required Foxconn to file a request to the Committee on Foreign

Investment in the United States.  This was filed two weeks late as a result of the issues

surrounding the formation of the agreement.  *See* ECF No. 31 at PageID #: 748-49, ¶ 88.  Under

the IA, as amended, Foxconn confirmed its "continued intent" to "utilize Lordstown Motors

Corp. as its preferred North American vehicle development partner."  ECF No. 31-1 at PageID #:

1089, § 5.03(f).  Between December 2022 and March 2023, LMC completed several

manufacturing milestones including completion of the first phase of the new vehicle

development work.  *See* ECF No. 31 at PageID #: 749, ¶ 89.  Foxconn again delayed providing

funding to LMC.  *See* ECF No. 31 at PageID #: 749, ¶ 91.  Plaintiffs' confidential witnesses

("CW-2" and "CW-3") allege these delays in funding led to little work being done at LMC's

Michigan location and caused suppliers to back out of deals between December 2022 and March

2023.  *See* ECF No. 31 at PageID #: 750, ¶ 94.

### D.  Foxconn's Repudiation

In March 2023, the value of LMC stock dropped below $1.00 per share.  On April 19,

2023, the NASDAQ stock market issued LMC a notice informing the company that it had 180

days to return the stock price to the required minimum according to the listing qualification rules.

*See* ECF No. 31 at PageID #: 751, ¶ 95.  On April 21, 2023, Foxconn sent a notice of default

stating the company would terminate the IA, as amended, if the stock price did not rise by May

21, 2023  *See* ECF No. 31 at PageID #: 751, ¶ 96.  LMC disputed the notice of default, stating

the NASDAQ notice did not constitute a breach of their agreement and that Foxconn's

termination of the IA would constitute an unlawful repudiation, causing material damage to the

6

(4:23CV1454)

company.  *See* ECF No. 31 at PageID #: 751-52, ¶ 97.  Foxconn did not respond to LMC's

objections, forcing LMC to publicly report the termination.  *See* ECF No. 31 at PageID #: 752,

¶ 98.  On June 27, 2023, LMC filed a voluntary petition for relief in a case under Chapter 11 of

Title 11 of the United States Code.  *See* *In re:  Lordstown Motors Corp.*, No. 23-10831-MFW

(Bankr. D. Del. filed June 27, 2023).  It also filed the Adversary Complaint against Foxconn.  *See*

ECF No. 31 at PageID #: 728, ¶ 17.  LMC's complaint alleges that since Foxconn's material

breach of the IA, it continues to refuse financing or cooperation, forcing the company to shut

down for lack of funds.  *See* Doc 1 in No. 23-50414-MFW; ECF No. 31 at PageID #: 756, ¶ 110.

### E.  Alleged Misleading Statements

Plaintiffs allege Defendants made multiple misleading statements between August 4,

2022 and March 6, 2023.  On August 4, 2022, Hightower stated during LMC's earnings

conference call for the second quarter of 2022:

> **Our manufacturing partners at the Foxconn plant in Ohio are ready for
> March**. . . .  Our 55/45 joint venture announced in mid-May, in which Foxconn
> committed an additional $100 million in capital, **is another action in support of
> the EV ambitions of both companies**. . . .  I recently spent 2 weeks in Taiwan
> with Foxconn Chairman, Young Liu. . . .  **we had several meetings about how to
> best operationalize the JV**. . . .

Also on August 4, Ninivaggi stated:

> In Q2, we closed our transactions with Foxconn, providing us with a flexible and
> less capital-intensive business model, **a world-class contract manufacturing
> partner, and a more scalable vehicle development platform as well as
> additional capital**. . . .

ECF No. 31 at PageID #: 757, ¶ 112 (emphasis in original; ellipsis added).

(4:23CV1454)

On November 7, 2022, after the abandonment of the JVA and implementation of the IA,

LMC issued a press release stating:

> . . . **it has been our objective to develop a broad strategic partnership that leverages the capabilities of both companies.  Foxconn's latest investment is another step in that direction**. . . .  "**Over the last year, the LMC and Foxconn teams have worked collaboratively to bring the Endurance into commercial production**. . . .  **The combination of LMC's experienced vehicle development team, Foxconn's growing EV ecosystem, the MIH platform, and our asset-light business model will allow us to bring great EVs to market faster and more efficiently**."

ECF No. 31 at PageID #: 760-61, ¶ 114 (emphasis in original; ellipsis added).

On November 8, 2022, LMC issued a press release announcing its financial results for the

third quarter of 2022, which states:

> . . . **Foxconn's additional investment in LMC is a strong sign of confidence in our team's product development and engineering capabilities**. . . .  **We continue to believe that deep collaboration with Foxconn, as its preferred North American vehicle development partner**. . . **is key to our company's long-term success**. . . .  "**We are proud of the accomplishments of the Lordstown and Foxconn EV Technology teams in bringing the Endurance into commercial production**. . . .  **We are also extremely excited by the additional investment and expanding relationship with Foxconn and the opportunities it provides**. . . .

ECF No. 31 at PageID #: 763-64, ¶ 117 (emphasis in original; ellipsis added).

On November 8, 2022, Hightower stated during an LMC earnings conference call:

> . . . **While launching the Endurance, we are also expanding our focus to the next vehicle program with Foxconn**. . . .  **we continue to make progress in the planning and predevelopment work**. . . .  **I believe we have great potential opportunities ahead of us with our growing relationship with Foxconn**. . . .

On the same call, Kroll stated:

8

(4:23CV1454)

> . . . **the joint venture . . . is being disbanded. We kind of think the direct investment in Lordstown is a better, simpler, easier structure. So I think its very favorable**.

ECF No. 31 at PageID #: 764-65, ¶ 118 (emphasis in original; ellipsis added).

On November 14, 2022, Hightower stated during a President's Speaker Series:

> . . . **it was very important to me that anything I said publicly be true**. . . . **I told the team we had two objectives . . . launch the Endurance and build this relationship with Foxconn**. . . . **[W]e were going to focus on three principles to do that, integrity, discipline, and collaboration**. . . .

ECF No. 31 at PageID #: 767-68, ¶ 120 (emphasis in original; brackets and ellipsis added).

On November 25, 2022, Hightower gave a presentation containing a slide stating:

> **Foxconn and LMC Engineering can share expertise and resources across organizations, globally**. . . .

ECF No. 31 at PageID #: 770, ¶ 122 (emphasis in original).

On December 22, 2022, Foxconn issued a press release quoting Hightower:

> "**As Foxconn's preferred vehicle development partner for North America, Lordstown Motors' highly capable team of engineers looks forward to creating additional electric vehicles in collaboration with the MIH Consortium and Foxconn EV ecosystem**[.]"

ECF No. 31 at PageID #: 773, ¶ 124 (emphasis in original; brackets added).

On January 4, 2023, Lordstown filed a disclosure on Form 8-K with the SEC, which states:

> **Worldwide manufacturer Foxconn** . . . **and Lordstown Motors, are working together to create a new EV-native model to enable increased collaboration, fast-track innovation and the cost-effectiveness needed**. . . . **The Foxconn EV ecosystem,** . . . **together with Lordstown Motors** . . . **is uniquely positioned to act upon the increased cross-industry collaboration and rapid innovation that is possible with Evs**. . . . **Foxconn, MIH, and Lordstown Motors are**

9

(4:23CV1454)

> **demonstrating that a new era of increased collaboration, rapid innovation and progress is here**. . . .  **Foxconn supplies components, software, supply chain and manufacturing expertise**. . . .  **The sale of the manufacturing plant** . . . **laid the groundwork for the two companies to collaborate on product development**. . . .  **The Foxconn EV ecosystem** . . . **creates a unique ability to address new market opportunities**. . . .

ECF No. 31 at PageID #: 775-76, ¶ 126 (emphasis in original; ellipsis added).

A presentation accompanying the Form 8-K also states:

> **The Foxconn & LMC partnership provides the industry with access to the assets and expertise to accelerate innovation, develop and manufacture tailored EVs at scale.  Sale of the manufacturing plant located in Lordstown, Ohio to Foxconn laid the groundwork for how the two companies will collaborate.**

ECF No. 31 at PageID #: 777, ¶ 126 (emphasis in original).

On February 13, 2023, Hightower stated during the CEO Panel Discussion:

> . . . **We have an agreement by which we will be developing future electric vehicle products in collaboration with Foxconn EV ecosystem**. . . .

ECF No. 31 at PageID #: 779, ¶ 128 (emphasis in original; ellipsis added).

On March 6, 2023, LMC issued a press release stating:

> **In Q4 2022, we expanded and strengthened our partnership with Foxconn.  We converted our prior $100 million joint venture into a direct investment in Lordstown Motors of up to $170 million,** $52 million of which was funded in November 2022. . . .  **We continue to work collaboratively with Foxconn**. . . .

ECF No. 31 at PageID #: 782, ¶ 130 (emphasis in original; ellipsis added).

Also on March 6, 2023, Kroll stated during an earnings conference call:

> . . . **we benefit from substantially lower operating complexity and risk by putting manufacturing in the hands of Foxconn**. . . .

On the same call, Hightower stated:

10

(4:23CV1454)

> . . . **we plan to leverage common components, common subsystems and share them across, that the plan is for them to be shared across multiple OEMs.**

ECF No. 31 at PageID #: 782-83, ¶ 131 (emphasis in original; ellipsis added).

A slideshow accompanying the earnings conference call states:

> **Progressed pre-development work on the new program in collaboration with Foxconn EV Ecosystem. . . .  Strengthened Partnership:  Additional Foxconn Investment in LMC**. . . .

ECF No. 31 at PageID #: 785, ¶ 133 (emphasis in original; ellipsis added).

Plaintiffs allege these statements were misleading because Defendants omitted significant problems arising under the partnership, characterizing it as collaborative and thriving, while, in reality, Defendants believed Foxconn was sabotaging their business, attempting to drive them into bankruptcy, and take over their assets.  *See* ECF No. 31 at PageID #: 792-93, ¶¶ 156-57. Defendants deny any knowledge of the partnership's impending failure until Foxconn repudiated the IA on April 21, 2023.  Defendants claim that the sudden repudiation forced them to re-evaluate Foxconn's motive, coming to the conclusion, in hindsight, that Foxconn misled LMC about their commitment to the partnership.  *See* Defendants' Memorandum in Support (ECF No. 35-1) at PageID #: 1210.

**F.  LMC's Warnings and Disclosures**

Defendants have submitted documents, subject to judicial notice, to contradict Plaintiffs' allegation that Defendants mischaracterized the relationship between LMC and Foxconn. According to Defendants, these documents detail public warnings LMC provided about the uncertainties surrounding the partnership.  *See* ECF No. 35-1 at PageID #: 1211-12.  LMC stated in the Form 10-K filed on February 28, 2022:

(4:23CV1454)

>. . . [W]e cannot predict whether we will be able to fully realize the anticipated
>benefits from any aspects of our contemplated relationship with Foxconn. . . .

ECF No. 35-5 at PageID #: 1297.

In a Form 8-K filed on August 4, 2022, LMC stated:

>. . . No assurances can be given that we will successfully implement . . . the
>recently completed transactions with Foxconn . . .  The success of the joint
>venture depends on many variables. . . .

ECF No. 35-7 at PageID #: 1340 (ellipsis added).

In a Form 10-Q filed on August 4, 2022, LMC stated:

>. . . The company's ability to continue as a going concern is dependant on our
>ability to realize the benefits of the Foxconn Transactions. . . . [T]he Foxconn
>Joint Venture may not succeed and may be terminated due to the failure to
>establish a sustainable partnership. . . .

ECF No. 35-7 at PageID #: 1345-46 (ellipsis and brackets added).

On November 7, 2022, after executing the IA, LMC stated:

>. . . [T]he Investment Transactions and other relationships entered into with
>Foxconn are subject to risks and uncertainties. . . .  If we are unable to maintain
>our relationship with Foxconn . . . [, it could] have a negative effect. . . .

ECF No. 35-9 at PageID #: 1364 (ellipsis and brackets added).

LMC stated in a Form 10-K filed on March 6, 2023:

>. . . No assurance can be given that we will ultimately be successful in further
>vehicle development or that we will be able to effectively realize the potential
>benefits of the . . . development partnership with Foxconn. . . .

ECF No. 35-13 at PageID #: 1449 (ellipsis added).

(4:23CV1454)

Defendants assert that these statements exemplify the public disclosures they made at the same time as the generally optimistic statements that Plaintiffs allege misled investors.  *See* ECF No. 35-1 at PageID #: 1212.

**II.  Judicial Notice and Documents Incorporated by Reference**

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).  The Court may consider documents that are "referred to in the complaint and [are] central to the plaintiff's claim" without converting a 12(b)(6) motion into a motion for summary judgment.  *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (brackets added); *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).  Under Fed. R. Evid. 201(b), the Court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Adjudicative facts must be relevant to the central issues in a case.  *Cece v. Wayne Cnty.*, 758 Fed.Appx. 418, 424 (6th Cir. 2018).  The Court considers any documents incorporated into the complaint or subject to judicial notice for the purpose of determining what information is

13

(4:23CV1454)

available, not to determine whether statements contained within the documents are true.  *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014).

Defendants request that the Court take judicial notice of several documents attached as exhibits to the Motion to Dismiss.  *See* ECF No. 35-14.  The documents are:

- Excerpts from a presentation deck used in connection with an earnings call held by Foxconn on May 12, 2022 (ECF No. 35-3)

- Form 8-K that LMC filed with the SEC on November 10, 2021, attaching the Asset Purchase Agreement and a press release issued on that date (ECF No. 35-4)

- Form 10-K that LMC filed with the SEC on February 28, 2022 (ECF No. 35-5)

- Form 8-K that LMC filed with the SEC on May 11, 2022, attaching the JVA and the Contract Manufacturing Agreement (ECF No. 35-6)

- Published transcript of an earnings call held by LMC on August 4, 2022; Form 10-Q that LMC filed with the SEC on August 4, 2022; Form 8-K that LMC filed with the SEC on August 4, 2022 (ECF No. 35-7)

- Two Form 4s that LMC filed with the SEC, which disclose (1) a transaction of LMC stock by Kroll on October 13, 2022, and (2) a transaction of LMC stock by Hightower on November 9, 2022; Form 4 disclosing a third stock transaction – by Hightower on August 26, 2022 (ECF No. 35-8)

- Form 8-K that LMC filed with the SEC on November 7, 2022, attaching a press release LMC issued on that date (ECF No. 35-9)

- Form 8-K that LMC filed with the SEC on November 8, 2022, attaching a press release LMC issued on that date; Published transcript of an earnings call held by LMC on November 8, 2022 (ECF No. 35-10)

- Press release issued by LMC on December 22, 2022 (ECF No. 35-11)

- Form 8-K that LMC filed with the SEC on January 4, 2023, attaching (1) Hightower's prepared remarks for a presentation he gave on January 5, 2023, and (2) a slide show accompanying his presentation (ECF No. 35-12)

14

(4:23CV1454)

- Form 8-K that LMC filed with the SEC on March 6, 2023, attaching a press release LMC issued on that date; Form 10-K that LMC filed with the SEC on March 6, 2023; Published transcript of an earnings call held by LMC on March 6, 2023 (ECF No. 35-13).

Plaintiffs only oppose Defendants' request for the Court to take judicial notice of ECF Nos. 35-3, 35-4, 35-6, and 35-8.  *See* Lead Plaintiffs' Memorandum in Opposition (ECF No. 37) at PageID #: 1522-23.  The Court takes judicial notice of the unopposed exhibits at ECF Nos. 35-5, 35-7, and 35-9 through 35-13.

### A.  ECF No. 35-3

Contrary to Plaintiffs' opposition to Defendants' request, *see* ECF No. 37 at PageID #: 1525-26, Foxconn's statements during the earnings call held on May 12, 2022 do not create a factual dispute or ask the Court to evaluate them for their "truth."  Instead, Defendants use the statements to portray Foxconn's positive characterization and publicly stated commitment to the partnership, regardless of whether the statements were true.  Because these statements help to reveal the totality of information Foxconn communicated to LMC, they are relevant in determining whether the Court can infer scienter as to Defendants' optimistic statements.  Finally, Plaintiffs do not refute the exhibit's authenticity or the public availability of its contents.  *See* ECF No. 37 at PageID #: 1525-27.  As such, the Court takes judicial notice of ECF No. 35-3.

### B.  ECF Nos. 35-4 and 35-6

Plaintiffs object to these exhibits because the Form 8-Ks were filed with the SEC before the start of the Class Period, *see* ECF No. 37 at PageID #: 1527, but Plaintiffs fail to provide justification for why this fact alone would make the documents irrelevant.  Plaintiffs dispute Defendants' public characterization of the Foxconn partnership, making such public statements

15

(4:23CV1454)

relevant in determining whether Defendants misled the public given the totality of available

information.  Plaintiffs submit no legal authority suggesting otherwise.  Plaintiffs also do not

refute that the information in these exhibits is publicly available, not subject to reasonable

dispute, or accurately determined from a reputable source.  As such, the Court finds that these

Form 8-Ks are relevant and takes judicial notice of ECF Nos. 35-4 and 35-6.

### C. ECF No. 35-8

Plaintiffs argue the Form 4s in this exhibit cannot be incorporated by reference into the

Amended Class Action Complaint (ECF No. 31) because they are not central to the claims in the

complaint.  *See* ECF No. 37 at PageID #: 1528.  Plaintiffs argue the stock sales documented by

the forms are not essential to proving scienter.  Plaintiffs, however, make the argument that the

sales bolster an inference of scienter.  *See* ECF No. 37 at PageID #: 1528.  Because Plaintiffs

base their scienter argument on the information disclosed in the forms by explicitly citing to

them, *see* ECF No. 31 at PageID #: 798-800, ¶¶ 178, 180,Plaintiffs cannot prevent the Court

from viewing the entirety of the documents.  *See Merzin v. Provident Fin. Grp., Inc.*, 311 F.

Supp.2d 676, 676 n.1 (S.D. Ohio 2004); *see also In re Omnicare*, 769 F.3d at 466 (practice exists

to prevent plaintiffs from "quot[ing] only selected and misleading portions of [ ] documents")

(brackets added) (citation omitted).  Additionally, the Form 4s are filed with the SEC and

16

(4:23CV1454)

publicly accessible, and an objectively reliable source, making them subject to judicial notice.[2] As such, the Court will consider ECF No. 35-8 in ruling on Defendants' Motion to Dismiss.

For the reasons stated above, the Court takes judicial notice of all 11 exhibits attached to Defendants' Motion to Dismiss (ECF No. 35).

### III.  Standard of Review

#### A.  Motion to Dismiss Under **Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]"

---

[2]  Courts in the Sixth Circuit often review SEC filings, including Form 4s, in determining motions to dismiss.  *See Plymouth Cnty. Ret. Ass'n v. ViewRay, Inc.*, 556 F. Supp.3d 772, 799-800 (N.D. Ohio 2021), *aff'd*, No. 21-3863, 2022 WL 3972478 (6th Cir. Sept. 1, 2022); *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp.2d 951, 970 (S.D. Ohio 2009); *In re Goodyear Tire & Rubber Co. Derivative Litig.*, No. 5:03CV2180, 2007 WL 43557, at *8 & n. 8 (N.D. Ohio Jan. 5, 2007).

(4:23CV1454)

devoid of "further factual enhancement." *Id.* at 557.  It must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678.  The plausibility standard is not akin to a "probability requirement," but it suggests more

than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.  When

a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short

of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557 (brackets

omitted).  "[When] the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader

is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  The Court "need not accept

as true a legal conclusion couched as a factual allegation or an unwarranted factual inference."

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal

quotation marks omitted).

### B. Securities Fraud Heightened Pleadings Standard

Because Sections 10(b) and 20(a) claims involve fraud, the Court also applies the special

pleading requirements set forth in Fed. R. Civ. P. 9(b).  While the Court interprets all facts in the

complaint as true, Plaintiffs must, at a minimum, "detail[ ] the 'who, what, when, where, and

how' of the alleged fraud." *Bondali v. Yum! Brands, Inc.*, 620 Fed.Appx. 483, 489 (6th Cir.

2015) (citations omitted; brackets added).  In addition, the complaint must meet the heightened

pleading standards for securities claims under the PSLRA. *Id.*  The PSLRA imposes more

18

(4:23CV1454)

"[e]xacting pleading requirements," requiring Plaintiffs to "state with particularity both the facts

constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention

'to deceive, manipulate, or defraud.' " *Tellabs*, 551 U.S. at 313 (brackets added) (quoting *Ernst*

*& Ernst v. Hochfelder*, 425 U.S. 185, 193 and n. 12 (1976)).  Additionally, when "an allegation

regarding the statement or omission is made on information and belief," Plaintiffs must "state

with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B).  These

heightened pleading standards mean that not all allegations that would survive a traditional

motion to dismiss under Rule 12(b)(6) are sufficient to survive dismissal in a private securities

class action.

### IV.  Section 10(b) of the Securities Exchange Act and SEC Rule 10b−5 Analysis

To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC

Rule 10b−5, Plaintiffs must establish "(1) a material misrepresentation or omission by the

defendant; (2) scienter, (3) a connection between the misrepresentation or omission and the

purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic

loss; and (6) loss causation." *Bondali*, 620 Fed.Appx. at 489 (quoting *Stoneridge Inv. Partners,*

*LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).  In this case, the parties dispute the

existence of a material misrepresentation or omission and scienter or mental culpability,

regarding Defendants' statements.

### A.  Actionable Material Misrepresentations or Omissions

To establish an actionable material misrepresentation or omission, Plaintiffs must allege

sufficient facts demonstrating "(1) that a defendant made a statement or omission that was false

19

(4:23CV1454)

or misleading; and (2) that this statement or omission concerned a material fact." *In re Omnicare*, 769 F.3d at 470. "[M]ateriality depends on the significance the reasonable investor would place on the withheld or misrepresented information." *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988) (brackets added); *see In re Nat'l Auto Credit, Inc. Sec. Litig.*, No. 1:98CV0264, 1999 WL 33919791, at *11 (N.D. Ohio Oct. 12, 1999) (holding facts are only material if a reasonable investor would have viewed the misrepresentation or omission as "having significantly altered the total mix of information made available") (citations omitted). In addition, it is not enough for a statement to be "false or incomplete, if the misrepresented fact is otherwise insignificant." *Basic*, 485 U.S. at 238.

"Soft" information and puffery do not constitute a material misrepresentation upon which stockholders would reasonably rely. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 576 (6th Cir. 2008); *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 943 (6th Cir. 2009). The Sixth Circuit distinguishes "hard" and "soft" information, defining "hard" information as factual information that is "objectively verifiable" and "soft" information as general predictions and opinions. "Soft" information is not actionable unless it is as certain as "hard" facts. *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005) (citing *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401-402 (6th Cir. 1997)); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir.1997)). Statements are not actionable if they are overly general, "lack[ing] the sort of definite projections that might require later correction." *In re Express Scripts Holdings Co. Sec. Litig.*, 773 Fed.Appx. 9, 12 (2d Cir.

20

(4:23CV1454)

2019) (citation omitted; brackets added). Any generically optimistic or overly broad statements cannot be the basis for a Section 10(b) claim. *See Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 468 (6th Cir. 2011) (ruling a vague characterization of securities bonds as "safe and secure" not objectively verifiable and, therefore, immaterial); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 418 (5th Cir. 2001) (holding statements about "positive" and "statistically significant" test results were too broad to create actionable misrepresentation).

Actionable omissions require some duty to disclose the information. *See Basic*, 485 U.S. at 239 n. 17 ("Silence, absent a duty to disclose, is not misleading under Rule 10b–5."). Defendants may have a duty to disclose when that duty is set forth in a statute or when an "inaccurate, incomplete or misleading prior" statement exists. *City of Monroe*, 399 F.3d at 669. Even if Defendants had a duty to disclose, the omission must also render affirmative statements misleading. *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 258 (2024) ("§ 10(b) and Rule 10b–5 do not create an affirmative duty to disclose any and all information.") (citation omitted)); *In re Allscripts, Inc. Sec. Litig.*, No. 00 C 6796, 2001 WL 743411 at *8 (N.D. Ill. June 29, 2001) ("[c]orporate executives have no general duty to disclose every problem that arises") (brackets added)). Here, Plaintiffs allege no omitted facts that would render Defendants' material statements untrue.

### 1. "Puffery" and Statements of "Corporate Optimism"

The majority of the alleged misstatements relay Defendants' beliefs, goals, and hopes for the future of their relationship with Foxconn. *See* ECF No. 31 at PageID #: 757-88, ¶¶ 112-34; *see I.B.E.W. v. Limited Brands, Inc.*, 788 F. Supp.2d 609, 634 (S.D. Ohio 2011) (finding

(4:23CV1454)

statements about "significant growth opportunities" were "clearly the type of subjective, optimistic fluff deemed to be immaterial puffery").  Defendants publicly discussed their "**objective to develop a broad strategic partnership**" (ECF No. 31 at PageID #: 760, ¶ 114), their "**progress in the planning and predevelopment work**" (ECF No. 31 at PageID #: 764, ¶ 118), and that LMC looked "**forward to creating additional electric vehicles**" with Foxconn (ECF No. 31 at PageID #: 773, ¶ 124).[3]  Defendants' statements do not contain the sort of definite, material information needed to trigger a duty to disclose.  Instead, Defendants' statements contain the kinds of generalities and reflections of "corporate optimism" rejected by courts as actionable misrepresentations.  *See In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-cv-01112, 2019 WL 6168254, at *9 (M.D. Tenn. Nov. 19, 2019) ("liability does not attach to mere corporate puffery or statements of corporate optimism") (citing *Ford*, 381 F.3d, at 570); *City of Monroe*, 399 F.3d at 669 ("The failure to disclose soft information is actionable only if it is virtually as certain as hard facts.") (internal quotation marks, brackets, ellipsis, and citation

_____

[3]  *See also* ECF No. 31 at PageID #: 757, ¶ 112 ("**Our manufacturing partners . . . are ready for March**."); ECF No. 31 at PageID #: 757, ¶ 112 (stating Foxconn provides "**a world-class contract manufacturing partner, and a more scalable vehicle development platform** . . . ."); ECF No. 31 at PageID #: 761, ¶ 114 (stating Foxconn partnership has helped LMC bring the Endurance and future EVs into the market); ECF No. 31 at PageID #: 761, ¶ 115 (". . . **strongly believe that deep collaboration . . . offers tremendous opportunities**. . . "); ECF No. 31 at PageID #: 763, ¶ 117 ("**Foxconn's additional investment in LMC is a strong sign of confidence**. . . ."); ECF No. 31 at PageID #: 764, ¶ 117 ("**We are proud of the accomplishments . . . .  We are also extremely excited by the additional investment**. . . ."); ECF No. 31 at PageID #: 765, ¶ 118 ("**I believe we have great potential opportunities ahead of us**. . . ."); ECF No. 31 at PageID #: 767, ¶ 120 ("**[I]t was very important to me that anything I said publicly be true**.") (brackets added); ECF No. 31 at PageID #: 783, ¶ 131 (". . . **as Foxconn's preferred vehicle development partner** . . .").

(4:23CV1454)

omitted)).  Plaintiffs fail to allege with particularity why omissions would make generic, "soft"

information in Defendants' statements misleading.  *See In re TransDigm Grp., Inc. Sec. Litig.,*

*440 F. Supp.3d 740, 767 (N.D. Ohio 2020)* (finding no duty to disclose omitted information

when the allegedly misleading statements were "vague, non-specific, subjective, and untethered

to any kind of objectively measurable standard"); *Omnicare, Inc.*, 583 F.3d at 943 (stating

omission of a contract dispute did not make the defendants' vague, optimistic predictions

misleading).

### 2.  Statements Describing the Foxconn Partnership and Agreements

Plaintiffs argue Defendants' statements generally discussing the Foxconn partnership

misled the public due to the failure to disclose delays and breaches happening behind the scenes.

*See* ECF No. 36 at PageID #: 1494.  Plaintiffs allege Foxconn "stonewalled" LMC, delayed both

entering into and fulfilling their obligations under the JVA, and "consistently failed to honor its

agreements."  Therefore, according to Plaintiffs, Defendants omitted facts that rendered their

public statements misleading.  ECF No. 31 at PageID #: 758-60, ¶ 113.  There is no dispute

regarding the verifiable, factual information in Defendants' public statements about the JVA.

Plaintiffs do not refute that the JVA was a "55/45 joint venture . . . in which Foxconn committed

an additional $100 million in capital" or that the agreement provided LMC "a flexible and less

capital-intensive business model, **a world-class contract manufacturing partner, and a more**

**scalable vehicle development platform as well as additional capital**."  ECF No. 31 at PageID

#: 757, ¶ 112.  During the same time, Defendants were candid about possible risks under the

JVA, explaining to potential investors that it "may not succeed and may be terminated due to the

23

(4:23CV1454)

failure to establish a sustainable partnership."  Form 10-Q that LMC filed with the SEC on

August 4, 2022 (ECF No. 35-7) at PageID #: 1346.  In claiming the statements discussing the

agreement were misleading, Plaintiffs rely on assertions that the CEO of Foxconn "refused" to

meet with Hightower and Foxconn failed to grant LMC access to the Model C and Model E

vehicle designs.  *See* ECF No. 31 at PageID #: 758-59, ¶ 113.  Assuming *arguendo* that

Foxconn's CEO refused to meet with Hightower, no facts in Defendants' statements mentioning

the meeting are rendered untrue.  Hightower did discuss the partnership with other Foxconn

executives during his trip to Taiwan.  *See* ECF No. 31 at PageID #: 742, ¶ 69.  On August 4,

2022, Hightower stated during LMC's Second Quarter 2022 Earnings Conference Call that

"**[w]hile in country, we had several meetings on how to best operationalize the [JVA]**."  ECF

No. 31 at PageID #: 757, ¶ 112 (brackets added).  Plaintiffs fail to allege facts showing how this

statement by Hightower is false.  After all, Defendants have no duty to disclose every detail of

the meetings.  *See In re United Am. Healthcare Corp. Sec. Litig.*, No. 2:05CV-72112 LPZ/RSW,

2007 WL 313491, at *10 (E.D. Mich. Jan. 30, 2007) (finding the omission of a material breach

of contract to be immaterial when the breach did not render the defendants' factual statements

about the agreement inaccurate).

    Plaintiffs also allege Defendants mischaracterized the state of their partnership after the

companies abandoned the JVA and entered into the IA, as amended.  Plaintiffs conclude that the

only reason the companies entered into a new agreement was because Foxconn "forced" LMC to

renegotiate through their failure to provide the Model C and Model E vehicle designs and

"constant bad faith conduct."  ECF No. 31 at PageID #: 743, ¶ 72; PageID #: 745, ¶¶ 76-77; ECF

(4:23CV1454)

No. 36 at PageID #: 1494.  Following the restructuring, Defendants described the new agreement as "**favorable**" due to its "**better, simpler, easier structure**," ECF No. 31 at PageID #: 765, ¶ 118, and that they "**benefit from substantially lower operating complexity and risk**," ECF No. 31 at PageID #: 782, ¶ 131.[4]  Contrary to Plaintiffs' conclusory beliefs, none of the delays or breaches under a previous agreement mean the general descriptions and beliefs about the new agreement or partnership are misleading.  Statements about the terms of the IA, as amended, are unrelated to the alleged omissions about the reasons behind the formation of it.  *Albert Fadem Tr. v. Am. Elec. Power Co.*, 334 F. Supp.2d 985, 1024 (S.D. Ohio 2004) (finding no duty to disclose omissions "unrelated to the statements" or "the subject of the omissions was not certain to occur").  Without alleging specific facts contradicting existing statements, Plaintiffs fail to plead omissions with the required particularity.  Because they did not result in an affirmative misleading statement, Defendants had no duty to disclose the omitted details behind the formation of the IA, as amended.  *City of Monroe*, 399 F.3d at 669.

To be actionable under the securities laws, an omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."

---

[4] *See also* ECF No. 31 at PageID #: 764, ¶ 118 ("**we continue to make progress in the planning and predevelopment work** . . ."); ECF No. 31 at PageID #: , ¶ 118 ("**Foxconn's additional investment in LMC is a strong sign of confidence . . . and will help accelerate the EV ambitions of both companies**"); ECF No. 31 at PageID #: 770, ¶ 122 ("**Foxconn and LMC Engineering can share expertise and resources across organizations, globally** . . ."); ECF No. 31 at PageID #: 776, ¶ 126 ("**Foxconn supplies components, software, supply chain and manufacturing expertise**. . . .  **The sale of the manufacturing plant located in Lordstown, Ohio to Foxconn** . . . **laid the groundwork for the two companies to collaborate** . . ."); ECF No. 31 at PageID #: 779, ¶ 128 ("**We have an agreement by which we will be developing future electric vehicle products** . . .").

(4:23CV1454)

*Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see Basic*, 485 U.S. at 232 (ruling that material misrepresentations or omissions must "significantly alter[ ] the total mix of information made available") (brackets added; internal quotation marks and citation omitted)). Plaintiffs cannot rely on the problems and ignore the benefits in the partnership to prove Defendants' general, optimistic statements are inconsistent with the actual "state of affairs" between the companies. Despite any disputes or delays that arose as part of a developing partnership, Defendants also experienced success and progress. The Amended Class Action Complaint (ECF No. 31) does not dispute that Foxconn tripled its investment in LMC under the IA, as amended, vouched for LMC with Softbank, moved the Endurance into production despite the delays, referred to LMC as a "strategic partner" and characterized the relationship as "progressing quite smoothly." ECF No. 35-3 at PageID #: 1265, 1267; *see, e.g.*, IA, as amended, at § 5.03(f) (Foxconn and its Affiliates "will utilize [LMC] as their preferred North American vehicle development partner") (ECF No. 31-1 at PageID #: 1089). Defendants do not claim that the partnership was without flaws, only that they were hopeful about its success. They submitted numerous statements warning of potential risks surrounding the partnership, acknowledging that "the Investment Transactions and other relationships entered into with Foxconn are subject to risks and uncertainties" and that "[n]o assurances can be given that [LMC] will successfully implement . . . [the] recently completed transactions with Foxconn." ECF No. 35-9 at PageID #: 1364 (brackets added). *See Lucescu v. Zafirovski*, No. 09cv4691 (DLC), 2018 WL 1773134, at *11 (S.D.N.Y. April 11, 2018) (rejecting argument that broad or general descriptions of company progress were misleading, especially when the defendants addressed uncertainties); *Allscripts*,

(4:23CV1454)

2001 WL 743411, at *9 (ruling that a statement is not misleading when defendants clearly disclosed the risks).

To the extent Plaintiffs argue that Defendants' general statements describing collaboration between LMC and Foxconn mischaracterized the relationship, the Court finds the argument to be lacking in merit.  Throughout the partnership, Defendants generally stated that LMC and Foxconn "**worked collaboratively**," ECF No. 31 at PageID #: 761, ¶ 114; PageID #: 811, ¶ 212, worked "**together to create a new EV-native model to enable increased collaboration**," ECF No. 31 at PageID #: 775, ¶ 126, and "**expanded and strengthened**" their partnership, ECF No. 31 at PageID #: 782, ¶ 130.  Plaintiffs do not allege facts in the Amended Class Action Complaint (ECF No. 31) that would show the parties did not work collaboratively. Instead, Plaintiffs argue that Foxconn's general "bad faith" and the delays in producing the Endurance – LMC's first electric vehicle – must mean the companies were not working together. *See* Lead Plaintiffs' Memorandum in Opposition (ECF No. 36) at PageID #: 1496-98.  While the Memorandum in Opposition asserts that Hightower "discovered" Foxtron's (Foxconn's subsidiary) competitive plans "during [his] Taiwan trip before the Class Period," ECF No. 36 at PageID #: 1498, that allegation is not in the Amended Class Action Complaint (ECF No. 31) and is in fact contradicted by Plaintiffs' allegation that LMC learned this information "later," *i.e.*, at some unidentified point *after* that meeting.  ECF No. 31 at PageID #: 742, ¶ 70 (citing Adversary Complaint at ¶ 39 (ECF No. 31-1 at PageID #: 843) (LMC learned this "subsequent[]" to Hightower's trip)).  Defendants disclosed in August 2022 that production of the Endurance would occur "initially at a very slow rate," ECF No. 35-7, PageID #: 1323, for reasons unrelated

(4:23CV1454)

to the state of the Foxconn partnership, ECF No. 35-7 at PageID #: 1346.  As such, the delays were not concealed by Defendants and were unrelated to collaboration between the companies. Regardless, supposed delays and Plaintiffs' allegations of "bad faith" do not negate the possibility that the companies did collaborate at the times alleged in Defendants' statements.  *See Allscripts*, 2001 WL 743411, at *9 (stating there is no "duty to report every glitch that arises" when a company is candid about the risks it faces); *Basic*, 485 U.S. at 232 (ruling that material misrepresentations or omissions must "significantly alter[ ] the total mix of information made available") (brackets added; internal quotation marks and citation omitted)).

Overall, the breaches under the abandoned JVA, delays, and other minor issues do not render general, positive statements describing the partnership or agreements inaccurate, especially considering the totality of the state of affairs and public revelation of risks.  As such, Plaintiffs fail to allege sufficient misstatements or omissions upon which investors would reasonably rely.

### 3. Forward-Looking Statements and the Safe Harbor Doctrine

The Safe Harbor Doctrine protects forward-looking statements from liability when they are accompanied by meaningful cautionary statements or when they are made without "actual knowledge."  15 U.S.C.A. § 78u-5(c); *see Huntington Bancshares*, 674 F. Supp.2d at 957; *Miller v. Champion Ents., Inc.*, 346 F.3d 660, 672 (6th Cir. 2003) (stating safe harbor provision of the PSLRA protects forward-looking statements accompanied by cautionary language regardless of scienter and forward-looking statements without warnings that Defendants made without actual knowledge that they were false or misleading).  A statement is forward-looking if

28

(4:23CV1454)

its "veracity" cannot be determined at the time the statement is made. *Lousiana Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, No. 2:19-cv-3347, 2021 WL 4397946, at *12 (S.D. Ohio Sept. 27, 2021). "A plaintiff may overcome this protection only if the statement was material; if defendants had actual knowledge that it was false or misleading; and if the statement was not identified as 'forward-looking' or lacked meaningful cautionary statements." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 548 (6th Cir. 2001) (en banc), *abrogated on other grounds by Tellabs, supra* (citing 15 U.S.C. § 78u-5(c)(1)). Many of the alleged misstatements contain immaterial, forward-looking statements.[5] *See* 15 U.S.C. § 78u-5(i)(1) (defining forward-looking statements under the PSLRA's safe harbor provision as defendants' projections, statements of plans and objectives, estimates of future economic performance, and the assumptions underlying forward-looking statements).

---

[5] *See* ECF No. 31 at PageID #: 757, ¶ 112 ("We expect production to accelerate. . . ."); ECF No. 31 at PageID #: 758, ¶ 112 (". . . **further developing our broad partnership with Foxconn** . . ."); ECF No. 31 at PageID #: 761, ¶ 114 (". . . **LMC's experienced vehicle development team, Foxconn's growing EV ecosystem** . . . **will allow us to bring great EVs to market faster and more efficiently**."); ECF No. 31 at PageID #: 761, ¶ 115 ("**deep collaboration** . . . **offers tremendous opportunities**. . . ."); ECF No. 31 at PageID #: 763-64, ¶ 117 ("**Foxconn's additional investment in LMC** . . . **will help accelerate the EV ambitions of both companies**."); ECF No. 31 at PageID #: 765, ¶ 118 ("**I believe we have great potential opportunities ahead of us** . . . **I look forward to our team executing and realizing them**."); ECF No. 31 at PageID #: 767-68, ¶ 120 (". . . **we have two objectives** . . . **launch the Endurance and build this relationship with Foxconn**"); ECF No. 31 at PageID #: 773, ¶ 124 (". . . **looks forward to creating additional electric vehicles in collaboration** . . ."); ECF No. 31 at PageID #: 776, ¶ 126 ("**Foxconn will leverage** . . ."); ECF No. 31 at PageID #: 779, ¶ 128 (". . . **we will be developing future electric vehicle products** . . ."); ECF No. 31 at PageID #: 783, ¶ 131 (". . . **we plan to leverage common components** . . . **the plan is for them to be shared** . . .").

(4:23CV1454)

Defendants made numerous cautionary statements about the Foxconn partnership throughout the class period.[6]  To constitute "meaningful cautionary language," Defendants statements must "convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements."  *Helwig*, 251 F.3d at 558-59.  In multiple forms filed with the SEC, LMC provides warnings about their production abilities and agreements with Foxconn.  In the Form 8-K filed on August 4, 2022,

---

[6]  *See* Form 10-K filed with the SEC on February 28, 2022 (ECF No. 35-5 at PageID #: 1297) (". . . we cannot predict whether we will be able to fully realize the anticipated benefits from any aspects of our contemplated relationship with Foxconn. . . ."); Form 8-K filed with the SEC on August 4, 2022 (ECF No. 35-7 at PageID #: 1340) ("No assurances can be given that we will successfully implement . . . the recently completed transactions with Foxconn, including the contract manufacturing agreement and the [JVA]. . . .  The success of the joint venture depends on many variables, including our ability to utilize the designs, engineering data and other foundational work of Foxconn, its affiliates, . . . ."); Form 10-Q that LMC filed with the SEC on August 4, 2022 (ECF No. 35-7 at PageID #: 1345) ("The Company's ability to continue as a going concern is dependent on our ability to realize the benefits of the Foxconn Transactions, raise substantial additional capital, complete the development of the Endurance, obtain regulatory approval, begin commercial production and launch the sale of the Endurance. . . ."); Form 10-Q that LMC filed with the SEC on August 4, 2022 (ECF No. 35-7 at PageID #: 1346) (". . . the Foxconn Joint Venture may not succeed and may be terminated due to the failure to establish a sustainable partnership. . . ."); Form 8-K filed with the SEC on November 7, 2022 (ECF No. 35-9 at PageID #: 1364) (". . . the Investment Transactions and other relationships entered into with Foxconn are subject to risks and uncertainties.  No assurances can be given that we will successfully implement . . . the Investment Transactions or other recently completed transactions with Foxconn. . . .  The funding transactions under the Investment Agreement are subject to closing conditions including regulatory approvals and further negotiation of development milestones. . . .  If we are unable to maintain our relationship with Foxconn or effectively manage outsourcing of the production of the Endurance to Foxconn, . . . [it could] have a negative effect on our production and operations."); Form 10-K filed with the SEC on March 6, 2023 (ECF No. 35-13 at PageID #: 1449) (". . . No assurance can be given that we will ultimately be successful in further vehicle development or that we will be able to effectively realize the potential benefits of the . . .development partnership with Foxconn. . . .").

30

(4:23CV1454)

Defendants warned investors that their success was subject to dangers including "our limited operating history and our ability to execute our business plan, including through our relationship with Foxconn," and '[t]he success of the joint venture depend[ed] on many variables, including our ability to utilize the designs, engineering data and other foundational work of Foxconn. . . ." ECF No. 35-7 at PageID #: 1339-40 (brackets added). Defendants also explicitly directed shareholders to these warnings in the earnings call held on August 4, 2022 in which Plaintiffs allege that Hightower and Ninivaggi made the first misleading statements of the class period. *Compare* ECF No. 35-7 at PageID #: 1322 ("Before we begin, I want to call your attention to our safe harbor provision, forward-looking statements that is posted on our website as part of our quarterly update and included in our earnings release. The safe harbor provision identifies risk factors and uncertainties that may cause actual results to differ materially from the content of our forward-looking statements for the reasons that we cite in our Form 10-K and other SEC filings, including uncertainties posed by the difficulty in predicting future outcomes.") *with* ECF No. 31 at PageID #: 757, ¶ 112. The forward-looking statements in the earnings call expressly directed investors to the warnings, therefore, adequately disclosing the risks associated with their statements. *See Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 Fed.Appx. 237, 244 (6th Cir. 2015) (stating risks are disclosed when the allegedly misleading statements incorporate the warnings by reference).[7]

---

[7] The same analysis applies to the forward-looking statements made in the press releases in November 2022 (ECF No. 31at PageID #: 760-61, ¶ 114; PageID #: 763-65, ¶¶ 117-18) accompanied by the warnings about the amended IA in the Form 8-K filed on November 7, 2022 (ECF No. 35-9, PageID #: 1363-64), and the forward-looking

(continued...)

(4:23CV1454)

Contrary to Plaintiffs' position, *see* ECF No. 36 at PageID #: 1499-1500, these disclosures do not contain mere generalities applicable to any partnership. Instead, they specifically reference the Foxconn agreements and the specific reasons the partnership could fail. *See Miller*, 346 F.3d at 678 (stating defendant is "not required to detail every facet or extent of that risk to have adequately disclosed the nature of the risk"); *Arbitrage Event-Driven Fund v. Tribune Media Co.*, No. 18 C 6175, 2020 WL 60186, at *8 (N.D. Ill. Jan. 6, 2020) (finding statements that a merger is "subject to a number of conditions" and there can be "no assurance" of success convey substantive warnings as required under the Safe Harbor provision). In addition, none of the forward-looking statements or warnings in the case at bar disclose risks that had already materialized. The delays in producing the Model C and Model E vehicle designs and other issues do not demonstrate that Defendants failed to "utilize the designs . . . of Foxconn," (ECF No. 35-7 at PageID #: 1340) or that any other material risks described in the SEC filings had already come to pass. Before the IA was restructured, LMC could not have known Foxconn would never fulfill its responsibilities. Defendants do not deny having experienced challenges in the partnership. The IA, as amended, did not require use of the model designs and none of the alleged breaches or delays after its implementation prove that any of Defendants' disclosed risks had occurred. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (stating none of the challenged statements contained an "explicit or implicit representation that Tesla had *not*

---

[7](...continued)
statements made in the press release and earnings call on March 6, 2023 (ECF No. 31, PageID #: 782-85, ¶¶ 130-31 and 133) accompanied by the warnings in the Form 10-K filed that day (ECF No. 35-13, PageID #: 1449-53).

(4:23CV1454)

already experienced" the specific risks they warned investors about, and therefore, defendants'

forward-looking statements were protected) (emphasis in original).

Therefore, the Safe Harbor Doctrine excuses from liability the allegations regarding all of

Defendants' forward-looking statements qualified by the meaningful cautionary language in

LMC's SEC reports.[8]

**B. "Fraud by Hindsight" Theory**

Many of Plaintiffs' allegations rest on LMC's claims of "bad faith" made against

Foxconn in the Adversary Complaint, which was filed after Foxconn's repudiation.  *See* ECF No.

31 at PageID #: 756, ¶¶ 110-11.[9]  While Defendants may have been aware of the breaches and

delays LMC experienced during the partnership, the law does not require them to reach and

disclose conclusions about the future of the relationship based on the issues.  In the Amended

Class Action Complaint, Plaintiffs generally allege that each misleading statement omitted the

facts that Foxconn "stonewalled" LMC and was "determined to maliciously and in bad faith

destroy Lordstown's business in an effort to strip Lordstown's assets and poach its talent at little

cost." ECF No. 31 at PageID #: 765-67, ¶ 119.  Allegations made in light of Foxconn's

---

[8]  As detailed in the discussion of scienter in Section IV(C) of this Memorandum of Opinion and Order, Plaintiffs fail to establish Defendants' actual knowledge that their statements were misleading.  Without actual knowledge, Plaintiffs forward-looking statements are protected under the Safe Harbor Doctrine, even if they had not been accompanied by cautionary language.

[9]  *See also* ECF No. 31 at PageID #: 728, ¶ 15; PageID #: 748-49, ¶ 88; PageID #: 792-93, ¶¶ 156-59.

(4:23CV1454)

repudiation *after* the fact do not establish Defendants' beliefs or knowledge about the partnership *before* it disbanded.

Defendants only had a duty to disclose contemporary information that would make material statements misleading.  Claims of securities fraud or misrepresentation based on allegations that "defendants should have anticipated future events and made certain disclosures earlier than they actually did" fail on their merits.  *Huntington Bancshares*, 674 F. Supp.2d at 959 (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[W]e have refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight.'  Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.") (brackets added; citation omitted)).  Allegations based on a pattern of "bad faith" and other conclusions drawn in the adversary complaint fail to plead facts with the required particularity.  *See Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1044 (6th Cir. 2016) (explaining allegations based on assumptions and conclusions about future consequences represent "impermissible fraud by hindsight").  The only facts Plaintiffs can draw from the adversary complaint are facts that were available to Defendants before the repudiation such as the existence of any breaches or delays.  The alleged omissions of Defendants' conclusions drawn after the repudiation are not actionable.

## C.  Scienter

To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5, Plaintiffs must allege facts giving rise to a strong inference of either knowing or reckless behavior.  *Bondali*, 620 Fed.Appx. at 489.  Although "[r]ecklessness will satisfy the

34

(4:23CV1454)

scienter requirement for misstatements or omissions of present fact . . . if the alleged

misstatement or omission is a 'forward-looking statement,' the required level of scienter is

'actual knowledge.' " *Plymouth*, 556 F. Supp.3d at 793 (quoting *Matrixx Initiatives, Inc. v.*

*Siracusano*, 563 U.S. 27, 48 n. 14 (2011)) (brackets added).  The Sixth Circuit defines

recklessness as an "extreme departure from the standards of ordinary care" rising above mere

negligence and "akin to conscious disregard." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 550

(6th Cir. 1999); *In re Officemax, Inc. Sec. Litig.*, No. 1:00CV2432, 2002 WL 33959993, at *11

(N.D. Ohio March 26, 2002).

To meet the heightened pleading standard for scienter, the Court must "engage in a

comparative evaluation," considering "competing inferences rationally drawn from the facts

alleged." *Tellabs*, 551 U.S. at 314.  When evaluating possible inferences of scienter, the

allegations must be assessed "holistically" and not in isolation.  *Id.* at 326.  The Sixth Circuit

established nine factors that can suggest a defendant's mental culpability under Section 10(b) and

Rule 10b–5.  *See Helwig*, 251 F.3d at 552.  The parties only dispute factors "(1) insider trading at

a suspicious time or in an unusual amount," "(2) divergence between internal reports and external

statements on the same subject" "(3) closeness in time of an allegedly fraudulent statement or

omission and the later disclosure of inconsistent information," and "(6) disregard of the most

current factual information before making statements."[10]  Because the Court does not find the

omission of the specific breaches and delays actionable, only Defendants' knowledge of

---

[10]  Lead Plaintiffs' Memorandum in Opposition only addresses *Helwig* factors (1), (2), (3), and (6), *see* ECF No. 36 at PageID #: 1506-1509, conceding that the other five factors are not present here.

(4:23CV1454)

Foxconn's "bad faith" and the state of the partnership is at issue regarding scienter.

**1.      Insider Trading at a Suspicious Time or in an Unusual Amount**

First, Plaintiffs allege Defendants engaged in insider trading, suggesting that they knew of the issues in the partnership and had motive to conceal them in order to make a profit before stock prices fell.  Plaintiffs base this allegation on two Form 4s that LMC filed with the SEC, which disclose (1) a transaction of LMC stock by Kroll on October 13, 2022, and (2) a transaction of LMC stock by Hightower on November 9, 2022.  *See* ECF No. 31, PageID #: 798-800, ¶¶ 178, 180.  As earlier indicated, the Court takes judicial notice of the Form 4s (ECF No. 35-8 at PageID #: 1351-52).  These explicitly state restricted stock units were converted into common stock in LMC to satisfy certain tax withholding obligations and were not sold by Kroll and Hightower as Plaintiffs claim.  Considering these documents, the allegation that these Defendants sold stock because of a failing relationship with Foxconn lacks factual support and subsist only on Plaintiffs' conclusory speculation.  Additionally, it is noteworthy that Hightower purchased 10,000 shares of LMC stock during the class period.  *See* ECF No. 35-8 at PageID #: 1350; *I.B.E.W.*, 788 F. Supp.2d at 631 (stating insider purchases "undermine any inference of scienter").  Therefore, the Court finds no suspicious insider trading activity supporting an inference of scienter.  *See City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*, 865 F.Supp.2d 811, 834-35 (W.D. Mich. 2012) (explaining that a lack of sales by individual defendants "actually undermines an inference of scienter," particularly when they "suffered large losses . . . from the shares they retained").

(4:23CV1454)

> **2.      Temporal Proximity of a Misleading Statement and Disclosure of Inconsistent Information**

Second, Plaintiffs claim the temporal proximity between allegedly misleading statements and the disclosure of Foxconn's April 21, 2023 repudiation support their allegations of scienter. *See* ECF No. 36 at PageID #: 1508-1509.  Plaintiffs do not allege LMC knew of the termination of the IA, as amended, prior to this disclosure.  Rather, they claim that LMC's statement on March 6, 2023 describing an "**expanded and strengthened** [ ] **partnership with Foxconn**", ECF No. 31 at PageID #: 782, ¶ 130 (brackets added), after Foxconn's additional investment in the company misled investors because LMC knew or should have known the partnership would fail.  *See* ECF No. 36 at PageID #: 1509.  The IA, as amended – an additional investment and restructured agreement with LMC – reasonably leads to an inference of a continued partnership despite issues under a different, possibly less favorable agreement.  After the restructuring, Plaintiffs only allege delays and minor issues, nothing that would suggest Foxconn planned to back out of the partnership.  *See* ECF No. 31 at PageID #: 748-50, ¶¶ 88-94.  After the final breach and failure to remedy it, Defendants publicly stated that Foxconn did not fulfill their obligations under the IA and likely would not.  *See* ECF No. 31 at PageID #: 789-92, ¶¶ 143-52.  Plaintiffs do not allege facts suggesting Defendants knew of the upcoming repudiation, and, contrary to Plaintiffs' claim, Defendants did not refuse to see obvious facts suggesting Foxconn would repudiate after they made their initial statement.  *See Doshi*, 823 F.3d at 1039 ("Before drawing an inference of recklessness, courts typically require multiple, obvious red flags demonstrating an egregious refusal to see the obvious, or to investigate the doubtful.") (internal quotation marks and citations omitted).  In light of Defendants' reasonable opposing beliefs, the

(4:23CV1454)

allegations in the Amended Class Action Complaint (ECF No. 31) do not meet the recklessness

standard of "extreme departure from the standards of ordinary care." *Comshare*, 183 F.3d at 550;

*Officemax*, 2002 WL 33959993, at *11. Even if Plaintiffs had meet this standard, the change in

relationship caused by Foxconn's material breach of contract undermines the claim that

statements made prior to the breach give rise to a strong inference of scienter. *See Officemax,*

2002 WL 33959993, at *18 (ruling that significant changes in circumstance explain the

discrepancies in the defendant's statements, rather than any fraudulent conduct); *Tellabs*, 551

U.S., at 323-24 (holding that plaintiffs must allege facts giving rise to an inference of scienter

that is at least as strong as any plausible opposing inferences).

### 3.      Disregarding Current Factual Information and "Red Flags"

Third, Plaintiffs argue Defendants disregarded the most current factual information

available to them by failing to disclose Foxconn's breaches and delays, including the Foxconn

CEO's failure to meet with Hightower, Foxconn not providing the Model designs required by the

JVA, and Foxconn's intention to sell its own vehicles in the U.S., allegedly in competition with

LMC. *See* ECF No. 36 at PageID #: 1506. Plaintiffs argue Kroll's awareness of "day-to-day

operations, business and financial affairs, and books and records" prove Defendants were aware

of the alleged omissions. ECF No. 36 at PageID #: 1503-04. "[H]igh-level executives can be

presumed to be aware of matters central to their business's operations," however, courts cannot

infer "fraudulent intent" solely from "Defendants' positions in the company and alleged access to

information." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004) (*abrogated on

other grounds by Frank v. Dana Corp.*, 646 F.3d 954 (6th Cir. 2011)) (brackets added); *In re*

(4:23CV1454)

*Cardinal Health Inc. Sec. Litig.*, 426 F. Supp.2d 688, 724 (S.D. Ohio 2006).  Defendants do not

claim to be unaware that issues arose during the partnership, only to being unaware of Foxconn's

bad faith and the likelihood the partnership would fail.  Allegations that Defendants "closely

monitored" the partnership[11] do not show they knew of the intentions behind Foxconn's actions.

Defendants also argue that statements demonstrating LMC's admitted reliance on Foxconn for

"critical funding" proves they knew the danger posed by a repudiation.  *See* ECF No. 36 at

PageID #: 1505.  Again, knowledge of issues and possible dangers surrounding the partnership

does little to prove Defendants were aware of or even recklessly disregarded information

suggesting Foxconn's secret intentions.

Plaintiffs also contend that Defendants' positions as senior level officers in the company

means they must have known about the terms of the JVA and IA and the issues that arose.  *See*

ECF No. 36 at PageID #: 1504-1508.  While knowledge of significant business operations

including the issues with the partnership can be assumed based on Defendants' positions, this

knowledge does not translate to knowledge of Foxconn's intentions.  Plaintiffs again fail to

sufficiently justify why knowledge of the terms of the JVA and IA would suggest awareness of

---

[11] *See, e.g.*, Hightower stated that he was "in constant communication with the
chairman of Foxconn," ECF No. 31 at PageID #: 798, ¶ 175; PageID #: 810, ¶ 210;
attended "**several meetings on how to best operationalize the [JVA]**," ECF No. 31 at
PageID #: 757, ¶ 112 (brackets added); and, "had several discussions about the first
vehicle program of the [JVA, *i.e.*, the Endurance]," ECF No. 31 at PageID #: 796, ¶ 171
(brackets added).  Kroll also admitted to being familiar with "[Lordstown's] day-to-day
operations, business and financial affairs, and books and records." ECF No. 31 at PageID
#: 808, ¶ 202 (brackets in original).  Finally, Ninivaggi noted the "**tremendous
opportunities**" that a "**deep collaboration with the Foxconn EV Ecosystem**" would
offer Lordstown.  ECF No. 31 at PageID #: 761, ¶ 115.

(4:23CV1454)

Foxconn's bad faith.  *See Albert Fadem Trust v. Am. Elec. Power Co., Inc.*, 334 F. Supp.2d 985, 1006 (S.D. Ohio 2004) (finding that conclusory allegations "based wholly on inferences to be drawn from circumstances and Defendants' conduct" insufficiently plead scienter).  It is untenable to argue that Defendants would enter into the Foxconn agreements and continue to implement their terms, all the while knowing the partnership would fail and force LMC into bankruptcy.  *See In re Sinclair Broadcast Grp., Inc. Sec. Litig.*, 473 F. Supp.3d 529, 537 (D. Md. 2020) (rejecting scienter premised on "secret intention" not to comply with agreement).  The Court finds Defendants' explanation of the alleged facts, which lacks fraudulent intent, more compelling.  It is not uncommon for businesses to restructure agreements that are unproductive. Here, the facts suggest the companies decided to distance themselves from a business model that was not working and enter into an agreement with a larger investment in LMC, not based on the Model C and E vehicle designs, but on developing a new "EV Program."  ECF No. 31 at PageID #: 745, ¶¶ 76-77.  In light of this competing inference, the Court finds Plaintiffs' allegation that Defendants knew the partnership would not be successful after the breach of the first agreement speculative.

Even if knowledge of the issues did equate to knowledge of Foxconn's intentions, Defendants' positions alone cannot lead to an inference of scienter.  As stated above, all allegations must be viewed holistically.  *Tellabs*, 551 U.S. at 326; *see Pittman v. Unum Grp.*, 861 Fed.Appx. 51, 55 (6th Cir. 2021) ("[T]he fact that executives are intimately familiar with a core component of their business does little to suggest fraudulent intent.  So this is not a scienter-bolstering fact.") (brackets added).  Without compelling facts suggesting scienter,

40

(4:23CV1454)

Plaintiffs' arguments based on Defendants' positions in the company or close monitoring of the partnership do not give rise to a strong inference of scienter.

Plaintiffs also allege the red flags in the partnership suggest Defendants knew or should have known of the poor status of the partnership.  *See* ECF No. 31 at PageID #: 794-809, ¶¶ 164-207.  The alleged red flags do not recharacterize Defendants' overall public portrayal of the relationship, especially considering the warnings Defendants provided.  *See PR Diamonds, 364 F.3d at 686-87* (stating that ignoring red flags can suggest negligence but typically fails to prove knowing or reckless behavior without blatantly obvious red flags).  Plaintiffs do not allege facts contradicting the positive aspects of the partnership that support Defendants' generally hopeful public characterizations of the relationship.  *See Campbell v. Lexmark Int'l Inc., 234 F. Supp.2d 680, 686 (E.D. Ky. 2002)* (holding that scienter must be viewed in light of the "rest of the picture," not just the narrow context alleged by plaintiff); *Albert Fadem Trust, 334 F. Supp.2d at 1007* (stating that allegations of recklessness in securities fraud cases must be based on highly unreasonable conduct wherein the danger is "so obvious that any reasonable man would have known of it").  In *Ashland, Inc.*, the Sixth Circuit ruled the defendant "may have engaged in bad (in hindsight) business judgments" but "such actions fall short of scienter in the context of securities fraud."  *Ashland, Inc., 648 F.3d at 470* (citations omitted).  Therefore, Defendants alleged "disregard of the most current factual information before making statements," *i.e.*, the sixth *Helwig* factor, favors Defendants and does not establish scienter under the heightened pleading standards.

41

(4:23CV1454)

### 4.    Confidential Witness Statements Suggesting Scienter

"[P]laintiffs may rely on confidential witnesses if they plead facts with sufficient particularity to support the probability that a person in the confidential witness's position would possess the information alleged." *Doshi*, 823 F.3d at 1037 n. 2 (brackets added).  The Sixth Circuit ruled that "[w]hile . . . anonymous sources are not altogether irrelevant to the scienter analysis, *conclusory or vague allegations* do not deserve much weight." *Ricker v. Zoo Entm't, Inc.* 534 Fed.Appx. 495, 496 n. 2 (6th Cir. 2013) (emphasis and brackets added) (internal quotation marks and citations omitted); *see also Konkol v. Diebold, Inc.*, 590 F.3d 390, 399 (6th Cir. 2009) ("When confidential sources are used to support vague and conclusory allegations, the allegations are not accorded much weight."), *abrogated on other grounds by Matrixx, supra* (internal quotation marks and citation omitted).  To the extent Plaintiffs rely on the statements made by the three confidential witnesses, the Court does not find their scienter arguments persuasive.

CW-1 states the belief that Foxconn deliberately caused delays and failed to provide LMC with data required under the JVA.  *See* ECF No. 31 at PageID #: 739-40, ¶¶ 61-63; PageID #: 743-44, ¶ 73.  For example, a Foxconn supervisor instructed CW-1, who now worked for Foxconn, not to help LMC with issues that arose at the Lordstown plant.  CW-1 based their conclusion that Foxconn was sabotaging LMC on this instruction and on witnessing other delays. Despite CW-1's "personal belief," Plaintiffs allege that the employee "was not told explicitly that Foxconn wanted [LMC] to fail"  *See* ECF No. 31 at PageID #: 739, ¶ 62; PageID #: 804-805, ¶ 196 (brackets added).  In addition, Plaintiffs do not allege CW-1 shared the confidential

(4:23CV1454)

witness's beliefs with Defendants, only that they must have known that the Foxconn partnership was failing because the employees at an LMC plant concluded that it was.

CW-2 and CW-3 merely allege work was stalled at LMC's Michigan location due to lack of funds, *see* ECF 31 at PageID #: 750, ¶ 94, but Plaintiffs again do not allege that these confidential witnesses informed Defendants of their beliefs. Like with CW-1's allegations, Plaintiffs conclude Defendants must have been aware of delays and deteriorating relationships with suppliers because of employees' beliefs. *See* ECF 31 at PageID #: 750, ¶ 94. Plaintiffs claim Hightower's statement congratulating the team at LMC, their "partners at Foxconn," and their "supplier partners around the world for **bringing the Endurance into commercial production**," *see* ECF No. 31 at PageID #: 802, ¶ 189, is intentionally misleading because of the delays witnessed by CW-2 and CW-3. *See* ECF No. 36 at PageID #: 1511. Delays and the production of only twelve vehicles does not mean the companies did not launch the Endurance together, especially when Defendants did not claim to produce or even plan to produce a certain number. Again, Plaintiffs use the CWs' statements to defend vague, conclusory allegations. Overall, the CWs' statements fail to create a connection between employees' beliefs and Defendants knowledge of the overall state of the partnership; therefore, they do not adequately support an inference of scienter under the heightened pleading standards.

### 5. Motive

Plaintiffs also allege Defendants had motive to deceive investors by portraying the Foxconn partnership as positive and strategic in order to "attract new partners and financing

43

(4:23CV1454)

prepetition" and obtain critical financing. ECF No. 31 at PageID #: 809-11, ¶¶ 208-14. *See In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp.2d 581, 599 (N.D. Ohio 2004) (finding that Plaintiffs had alleged a strong inference of scienter when considering Plaintiffs' allegations in the aggregate). Without also establishing Defendants acted with the requisite state of mind, facts demonstrating motive and opportunity do not establish a strong inference of scienter. *Comshare*, 183 F.3d at 551. While the Court may consider possible motives in analyzing scienter, generic motive allegations are typically unpersuasive, considering all corporations seek to portray themselves and their operations in a positive light. *PR Diamonds*, 364 F.3d at 690 ("All corporate managers share a desire for their companies to appear successful. That desire does not comprise a motive for fraud.").

Plaintiffs also claim Defendants relied on the Foxconn partnership for funding, and, therefore, had motive to conceal their bad faith and "attempts to sabotage" LMC. ECF No. 31 at PageID #: 795, ¶¶ 167-68; PageID #: 809, ¶ 208. Without knowledge or reckless disregard of facts suggesting Foxconn would repudiate, Defendants' general motive to appear successful to stockholders, does not present persuasive evidence of scienter. *See Bondali*, 620 Fed.Appx. at 492 (stating motive to conceal aspects of plaintiff's operations does not prove scienter simply because they were important to the company's success).

Overall, Plaintiffs do not plead sufficient evidence or circumstances that would have alerted Defendants to Foxconn's bad faith prior to their repudiation. When viewed holistically, Plaintiffs' allegations fail to give rise to a strong inference of scienter, especially in light of more compelling opposing inferences.

(4:23CV1454)

## V.  Analysis of Section 20(a) Claim

When a primary violation of securities law is shown, Section 20(a) imposes joint and several liability on ''controlling persons.''  Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), provides, in relevant part, that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person." (brackets added).  Because Plaintiffs' Section 10(b) and Rule 10b–5 claim fails, their Section 20(a) claim also fails.  *See Omnicare, Inc.*, 583 F.3d at 947 ("[T]he district court properly dismissed the Plaintiffs' claims under § 10(b) and Rule 10b–5.  Therefore, dismissal of control person liability under § 20 was also proper." (brackets added; footnote omitted); *Bondali*, 620 Fed.Appx. at 493.

## VI.  Conclusion

For the foregoing reasons, the Court grants Defendants' Request for Judicial Notice (ECF No. 35-14) and takes judicial notice of Exhibits 1-11 (ECF Nos. 35-3 through 35-13).  The Court also grants Defendants' Motion to Dismiss (ECF No. 35) and dismisses the Amended Class Action Complaint (ECF No. 31).


IT IS SO ORDERED.


   September 30, 2024                        */s/ Benita Y. Pearson*
Date                                         Benita Y. Pearson
                                             United States District Judge

45